

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

BRIAN BENTLEY, individually and )
as Guardian of his minor child, A.B., )
)
    Plaintiff, )
)
v. )   CASE NO. CV-_____
)
JUUL LABS INC.; *et al*., )
)
    Defendants. )

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants JUUL Labs Inc. ("JLI"), Altria Group, Inc. ("Altria"), and Philip Morris USA Inc. ("PM USA") (together, the "Removing Defendants") hereby remove this action from the Circuit Court of Limestone County, Alabama, where it is pending as Case No. 44-cv-2019-900271, to the United States District Court for the Northern District of Alabama, Northeastern Division. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff Brian Bentley and Defendants JLI, PAX Labs, Inc. ("PAX"), Altria, and PM USA, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The citizenship of Defendant Athens Smoke Shop (the "Resident Defendant") should be disregarded because it is not properly joined in this lawsuit. The Resident Defendant was fraudulently joined for the sole purpose of destroying diversity, and therefore

the claims against it should be disregarded for purposes of examining diversity jurisdiction.  Grounds for removal are as follows:

## I. BACKGROUND

1.      Plaintiff Brian Bentley, individually and as Guardian of his minor child, A.B., commenced this action on July 15, 2019, in the Circuit Court of Limestone County, Alabama, which is within the district and division to which this case is removed. Plaintiff filed an Amended Complaint on July 26, 2019.  And on August 6, 2019, Plaintiff filed a Second Amended Complaint.  In this products liability action, Plaintiff alleges that his minor son has "developed a severe nicotine addiction" through the use of JUUL vapor devices.  *See* Second Am. Compl. ("SAC"), ¶ 1.

2.      Plaintiff's Complaint seeks an unspecified amount of compensatory and punitive damages from all defendants and alleges that JUUL products are defective, both in design and warning, and further asserts claims of negligence/gross negligence, wanton and willful conduct, fraud, conspiracy to commit fraud, intentional misrepresentation, outrage, and unjust enrichment.  The Complaint asserts claims against entities allegedly responsible for the design, manufacture, and labeling of JUUL vapor products.  To evade this Court's jurisdiction, however, the Complaint attempts to state claims against the Resident Defendant, which allegedly sold JUUL products at retail to the public.  These claims fail both as a matter of

2

settled Alabama law and undisputed fact, and the Resident Defendant is fraudulently joined.  Consequently, this Court should ignore the citizenship of that defendant in assessing its subject matter jurisdiction in this case.

3.      JLI was served with the Summons and Complaint on July 16, 2019. Altria and PM USA were served on July 18, 2019.  This Notice is timely filed under 28 U.S.C. § 1446(b).

4.       As required under 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the Removing Defendants in the underlying state court action is attached as **Exhibit A**.

5.      All of the Removing Defendants join in and consent to this removal. Defendant PAX PAX has informed Removing Defendants that is has not yet received service, but it nevertheless consents to removal of this action. The consent of the fraudulently joined Resident Defendant is not required.  *Id.*; *see also Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 815 (5th Cir. 1993), *cert. denied*, 510 U.S. 868, 870 (1993) (holding that the removing defendant was not required to obtain consent for removal from the alleged improperly joined defendant).

6.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Circuit Court of Limestone County, Alabama.

## II.

### THIS COURT HAS SUBJECT-MATTER JURISDICTION UNDER 28 U.S.C. § 1332.

7.     The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332.  Complete diversity of citizenship exists between Plaintiff and the Removing Defendants.  The amount in controversy exceeds $75,000 exclusive of interest and costs.

**Complete Diversity Exists Between Plaintiff & Defendants.**

8.     Plaintiff is a citizen of Alabama.  SAC, ¶ 15.

9.     JLI is a Delaware corporation with its principal place of business in California.  SAC, ¶ 21.

10.     PAX is a Delaware corporation with its principal place of business in California.  SAC, ¶ 22.

11.     Altria is a Virginia corporation with its principal place of business in Virginia.  SAC, ¶ 23.

12.     PM USA is a Virginia corporation with its principal place of business in Virginia.  SAC, ¶ 24.

13.     Plaintiff's Second Amended Complaint names Athens Smoke Shop as a defendant.[1] SAC, ¶ 26.  As discussed below, Athens Smoke Shop is fraudulently

---

[1] Plaintiff initially named Discount Tobacco as a defendant and alleged that it was a "privately-owned store in Limestone County.  Compl., ¶ 25.  On July 26, 2019, Plaintiff filed a motion to dismiss Discount Tobacco with prejudice, which the state court granted on July 29, 2019. *See* Ex. A.

joined.  Accordingly, although it is alleged to be a citizen of Alabama, it is ignored for purposes of diversity of citizenship.

14.    The Complaint also purports to state claims against unnamed, fictitious defendants 1 through 13.  For purposes of removal, however, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. § 1441(a).

15.    Accordingly, for purposes of diversity jurisdiction, there is complete diversity between Plaintiff and Defendants.

**The Amount in Controversy Exceeds $75,000.**

16.    The amount in controversy requirement is met.  A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014), and a removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).  When determining whether this burden is met, this Court applies its "judicial experience" and "common sense" in "discerning whether the allegations in a complaint facially establish" the jurisdictional amount.  *Id.* at 1062-63.

17.    Here, Plaintiff's Complaint does not include a specific demand for damages.  Upon a full and fair reading of the Complaint, however, the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff's Complaint

5

seeks damages for strict products liability, negligence/gross negligence, wanton and willful conduct, fraud, conspiracy to commit fraud, intentional misrepresentation, outrage, and unjust enrichment.   While Plaintiff does not specify the amount of damages sought, he alleges that his minor child, A.B., has sustained "severe" injuries in the form of "nicotine addiction" and "will continue to struggle with this addiction for the rest of his life." SAC, ¶ 19. He further alleges that A.B.'s nicotine addiction "permanently injured and altered his developing brain" and that A.B. "has suffered harm through exposure to significant toxic substances, which may cause or contribute to causing disease and future health problems." *Id*.   Under these allegations, the amount in controversy exceeds the jurisdictional minimum.

18.    Moreover, Plaintiff's Complaint explicitly seeks punitive damages, *id*. ¶ 362, which must be considered in the Court's amount-in-controversy analysis. *See Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered"); *Blackwell v. Great Am. Fin. Res., Inc*., 620 F. Supp. 2d 1289, 1290 (N.D. Ala. 2009).   Plaintiff also seeks attorneys' fees.   *See* SAC, Prayer for Relief.   This makes it even clearer that the amount in controversy is satisfied.   As Judge Acker explained, "the moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive damages, or emotional

distress, or attorneys' fees, the claim automatically is deemed to exceed $75,000 and becomes removable under 28 U.S.C. § 1332." *Jones v. Hartford Fire Ins. Co.*, No. 12-AR-2879-S, 2013 WL 550419, at *1 (N.D. Ala. Feb. 7, 2013); *see also Smith v. State Farm Fire and Cas. Co.*, 868 F. Supp. 2d 1333, 1335 (N.D. Ala. 2012) ("[P]laintiffs . . . who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that plaintiff will never accept more.  Otherwise, a plaintiff will find herself in a federal court . . . .").

19.    Although the Removing Defendants do not concede that Plaintiff is entitled to compensatory or punitive damages or fees of any amount, a fair reading of Plaintiff's Complaint shows that the amount in controversy exceeds $75,000.

### III.

### THE RESIDENT DEFENDANT IS FRAUDULENTLY JOINED.

20.    The Second Amended Complaint includes one Alabama defendant, Athens Smoke Shop, in addition to the four out-of-state Defendants.   The Resident Defendant, however, is fraudulently joined and its citizenship should be ignored for purposes of considering diversity jurisdiction. *See, e.g.*, *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) ("[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the

district court must ignore the presence of the non-diverse defendant and deny any motion to remand").

21.     To establish fraudulent joinder of a non-diverse defendant, a party must show either that "there is no possibility the plaintiff can establish any cause of action against the resident defendant" or that "plaintiff has fraudulently pled jurisdictional facts." *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir. 1989); *see also Mask v. Chrysler Corp.,* 825 F. Supp. 285, 288 (N.D. Ala. 1993) (same), *aff'd*, 29 F.3d 641 (11th Cir. 1994); *Kimmons v. IMC Fertilizer, Inc.,* 844 F. Supp. 738, 739 (M.D. Fla. 1994) ("Where state law provides no reasonable basis on which to impose liability upon a non-diverse defendant, the joinder of such a party is deemed fraudulent and does not defeat diversity for federal jurisdictional purposes.").

22.     When evaluating whether a plaintiff may prevail on a claim against a defendant alleged to have been fraudulently joined, the Eleventh Circuit has stated that "[t]he potential for legal liability 'must be reasonable, not merely theoretical.' . . . Surely, as in other instances, reason and common sense have some role." *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) and *Braden v. Wyeth*, CV-04-PT-235-E (N.D. Ala. June 30, 2004)); *see also Culpepper v. Stryker Corp.*, 968 F. Supp. 2d 1144, 1151 (M.D. Ala. 2013) (same).

23.     The determination of whether a resident defendant has been fraudulently joined is based upon the plaintiff's pleadings at the time of removal. *Cabalceta*, 883 F.2d at 1556.   The district court also may consider declarations, deposition transcripts, and other evidence to determine whether fraudulent joinder has occurred.   *Legg*, 428 F.3d at 1323; *Coker v. Amoco Oil Co*., 709 F.2d 1433, 1440 (11th Cir. 1983).

24.     The Resident Defendant has been fraudulently joined because there is no possibility Plaintiff can establish a claim against it.   Plaintiff's "Factual Allegations" contain only conclusory allegations concerning this Defendant focusing instead on JLI's design of its vapor products, the adverse health effects of nicotine, JLI's alleged concealment of the addictive nature of its products, JLI's marketing materials and the relationship between JLI, PAX, Altria and PM USA. *See* SAC, ¶¶ 45-278.  The only conclusory references to the Resident Defendant are necessarily inapplicable to Plaintiff and, as described in the following sections, do not suffice to state a claim.

### A.     Strict Products Liability - Failure To Warn and Design Defect.

25.     Plaintiff's strict liability claims for failure to warn and design defect against Athens Smoke Shop are "product liability" claims that are barred under the "Innocent Seller" statute, ALA. CODE § 6-5-521, which provides in relevant part:

(b)  No product liability action may be asserted or may be provided a
claim for relief against any distributor, wholesaler, dealer, retailer, or

seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:

> (1)  The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.

> (2)  The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.

> (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.

ALA. CODE § 6-5-521(b).[2]

26.    Plaintiff has not alleged, and cannot establish, that any of the exceptions under the statute apply to Athens Smoke Shop.  Indeed, Athens Smoke Shop did not: (1) manufacture or assemble any JUUL product; (2) exercise substantial control over the design, testing, manufacture, packaging, or labeling of any JUUL product; or, (3) alter or modify any JUUL product.  *See* Athens Smoke Shop Decl., ¶¶ 8-10 (attached as Ex. B); *see also Cooper v. Nissan Motor Co.*, 2018 WL 3109612, at *2

---

[2]  A "product liability action" is defined as "any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) negligence, (2) innocent or negligent misrepresentation, (3) the manufacturers liability doctrine, (4) the Alabama extended manufacturer's liability doctrine as it exists or is hereafter construed or modified, (5) breach of any implied warranty, or (6) breach of any oral express warranty and no other.  A product liability action does not include an action for contribution or indemnity."  ALA. CODE § 6-5-521(a).

N/A

(N.D. Ala. June 25, 2018) (Alabama automobile dealership fraudulently joined where removing defendant submitted declaration that dealership never "had any role in the design, manufacture, testing, assembly, warnings, or distribution of any Nissan vehicle," and it "never inspected, repaired, or performed maintenance on the vehicle's fuel storage and delivery system or the exhaust system that [plaintiff] alleges was defective"). Accordingly, there is no possibility that Plaintiff could recover on his products liability claims against the Resident Defendant.

27.    Even putting aside the Innocent Seller statute, Plaintiff's failure to warn claim would fail. To state a claim for failure to warn under Alabama law, the plaintiff must allege: (1) the defendant supplies a product for another to use; (2) the defendant "knows or has reason to know that the [product] is or is likely to be dangerous for the use for which it is supplied"; (3) the product's dangerous condition is not obvious to the user; (4) the defendant "fails to exercise reasonable care to inform [the user] of [the product's] dangerous condition or of the facts which make it likely to be dangerous"; and (5) the product causes physical harm "in the manner for which and by a person for whose use it is supplied." *Ex parte Chevron Chem. Co.*, 720 So. 2d 922, 924–25 (Ala. 1998) (quoting Restatement (Second) of Torts § 388)). A duty to warn "is triggered only when the supplier has 'no reason to believe' that the user will realize the 'dangerous condition' of the product." *Id.* at 925.

28.     In addition, "[w]here the public possesses common knowledge about the risk of harm flowing from the use of a product, a manufacturer [or seller] is not required to provide a 'redundant warning.'" *Robinson v. Anheuser-Busch, Inc.*, 2000 WL 35432556, at *3 (M.D. Ala. Aug. 1, 2000) (no duty to warn about dangers of underage drinking in beer commercials using cartoon characters even if cartoons appeal to children because dangers of underage drinking are common knowledge). Minors are held accountable for the same common knowledge as adults when they use adult-only products. *Id*. Manufacturers (and sellers) also do not have a duty to warn consumers of dangers which are obvious or commonly known. *Ford Motor Co. v. Rodgers*, 337 So. 2d 736, 739 (Ala. 1976) (reason for placing duty to warn on manufacturer or supplier of product is to inform user of dangers of which he is unaware; there is no duty to warn when danger is obvious).

29.     The Complaint does not allege any basis upon which the Resident Defendant had any duty to warn Plaintiff or A.B. that JUUL products contain nicotine, or to warn Plaintiff about nicotine's "addictive nature." Plaintiff alleges that JLI openly advertised its "JUULpod" products as each containing nicotine approximately equivalent to a pack of cigarettes. SAC, ¶ 103. While Plaintiff also alleges that JUUL products actually are more addictive than a cigarette, Plaintiff alleges that JLI (and not the Resident Defendant) "fraudulently concealed material information about the addictive and dangerous nature of its e-cigarettes." SAC, ¶

12

88.   The Resident Defendant is not alleged to have known about the allegedly fraudulently concealed "information," and it has submitted a declaration confirming that it did not.  *See generally* Athens Smoke Shop Decl.

30.   While the Resident Defendant, just like anyone else, could reasonably know that JUUL products contain some amount of nicotine, that information was publicly disclosed by JLI.  Again, Plaintiff alleges that JLI "widely" advertised that each JUUL pod contains "as much nicotine as a pack of cigarettes."   *E.g.*, SAC, ¶¶ 98, 103, 111-112.  Further, Plaintiff alleges in the Complaint that JUUL products and JUUL pods are "an electronic nicotine delivery system."  SAC, ¶ 1.  Thus, by his own description, JUUL products "deliver[]" nicotine.  Plaintiff cannot reasonably allege A.B. was unaware that JUUL products delivered (and thus contained) nicotine.  It is open and obvious to any ordinary person that a "nicotine delivery system" would contain nicotine.

31.   Plaintiff also cannot contend that nicotine's addictive nature was not "commonly known" or "open and obvious."  "Nicotine's addictiveness is a matter of public record, and addiction is a predictable consequence of using an addictive product."  *Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 975 (9th Cir. 2002) (cited with approval by the Alabama Supreme Court in *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101 (Ala. 2003)).  The Ninth Circuit observed more than a decade ago:

13

> [T]he dangers of nicotine addiction have been in the public spotlight for many years.  The Surgeon General concluded that nicotine is addictive in 1988, based on the "abundant scientific literature demonstrating that '[c]igarettes and other forms of tobacco are addicting.'"  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 154 [ ] (2000) (quoting Surgeon General's Report, *supra*, at 14). He determined that the "'pharmacological and behavioral processes that determine tobacco addiction are similar to those that determine addiction to drugs such as heroin and cocaine.'"  *Id.* (quoting Surgeon General's Report, *supra*, at 15).  At congressional hearings in 1994, FDA Commissioner David Kessler testified at length about nicotine's addictive properties.  [Citations omitted.] . . . The FDA asserted jurisdiction over tobacco products in 1996 precisely because of their addictive effects. . . .

*Soliman*, 311 F.3d at 973; *see also Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28, 33 (Ala. 2003), *citing Tillman v RJ Reynolds*, 89 F. Supp. 2d 1297, 1301-02 (2000) (citing cases); *Arnold v. R.J. Reynolds Tobacco Co.*, 956 F. Supp. 110, 115 n.8 (D.R.I. 1997) ("[T]he dangers of cigarette smoking and the addictive nature of nicotine have become common knowledge").  There is no legal basis for Plaintiff to contend that any supplier could be liable for a failure to warn about nicotine's addictive properties in light of such public knowledge.

32.     It also is irrelevant if A.B. subjectively "believed that JUUL was safe, harmless, fun, and cool[,]" as alleged in the Complaint.  SAC, ¶ 119.  The standard for common knowledge is objective, and therefore "the overall knowledge common to the community . . .  is a basis for determining a duty to warn, not what individuals may or may not know."  *Robinson*, 2000 WL 35432556, at *2.  Moreover, Plaintiff does not allege that A.B. ever communicated his alleged "belief" to the Resident

Defendant, or that he told the Resident Defendant he did not know nicotine is addictive. For a duty to warn to have arisen under Alabama law, the Resident Defendant must have had "reason to believe" that Plaintiff was unaware that JUUL products contain nicotine and that nicotine is addictive. *Ex parte Chevron*, 720 So. 2d at 925 (duty to warn triggered only when supplier has "no reason to believe" user will realize "dangerous condition" of the product); *Speights v. Hertz Corp.*, 2013 WL 4804284, at *4 (N.D. Ala. Sept. 9, 2013) (rejecting duty to warn claim; complaint alleged compact car was dangerous because seatbelt would not fit around decedent but defendant had no reason to believe decedent would not or could not realize his seat belt would not fit). Accordingly, Plaintiff's failure to warn claim fails.

### B.    Negligence, Gross Negligence, and Wanton and Willful Conduct.

33.    While the Innocent Seller Act does not preclude claims based upon "independent acts unrelated to the product design or manufacture," Plaintiff's negligence, gross negligence, and wanton and willful conduct claims are based primarily on allegations that the Resident Defendant sold JUUL products with knowledge of their unreasonably high nicotine content and failed to warn consumers of the alleged dangers associated with the products. These claims are indistinguishable from Plaintiff's failure to warn and design defect claims and do not allege that the Resident Defendant committed any act that is "unrelated to the

product design or manufacture."  Accordingly, the Innocent Seller statute also bars these claims.

34.     Plaintiff's negligence, gross negligence, and wanton and willful conduct claims also hinge on the Resident Defendant's alleged sale of JUUL products to minors, including A.B.  Plaintiff alleges that the Resident Defendant "marketed and sold JUUL to A.B. with knowledge that he is and was underage or with reckless and/or negligent disregard for the fact A.B. was underage in violation of Alabama tobacco laws and/or regulations" (SAC, ¶ 28); that the Resident Defendant "failed to comply with Alabama law prohibiting purchases of tobacco products and electronic cigarette products by persons under the age of 19 years" (*id.* ¶ 309); and that the Resident Defendant's "conduct was reckless and/or wanton and in direct violation of the applicable regulations and laws of Alabama concerning the sale of tobacco products and electronic cigarette products to individuals under the age of 19 years." *Id.* ¶ 321.

35.     However, the Resident Defendant—which first started selling JUUL products at retail on or around November 1, 2018—has always maintained a policy of never selling any JUUL product to an individual who appears under the age of 30, unless he or she provides a valid form of identification proving that the customer is 19 years of age or older.  Athens Smoke Shop Decl., ¶ 6. Likewise, Mr. Amaji, the President of Athens Smoke Shop, is not aware of any instance where it sold a JUUL

product to a customer under the legal age of purchase. *Id.* at ¶ 7.  As such, Plaintiff's negligence, gross negligence, and wanton and willful conduct claims against the Resident Defendant fail.

36.    Plaintiff's negligence, gross negligence, and willful and wanton conduct claims against the Resident Defendant likewise are barred by the doctrine of *in pari delicto* and the *Hinkle* Rule.  The doctrine of *in pari delicto* stands for the proposition that "where the fault is mutual, the law will leave the case as it finds it." *Tucker v. Ernst & Young, LLP*, 159 So. 3d 1263, 1269 (Ala. 2014).  Alabama's *Hinkle* Rule provides that "[a] person cannot maintain a cause of action if, in order to establish it, he must rely in whole or in part on an illegal or immoral act or transaction to which he is a party." *Id.* (quoting *Hinkle v. Railway Express Agency*, 6 So. 2d 417, 421 (Ala. 1942));  *see also Oden v. Pepsi Cola Bottling Co. of Decatur, Inc.*, 621 So. 2d 953 (Ala. 1993) (affirming summary judgment for defendant vending machine company where minor was killed by falling machine while attempting to steal soft drinks from it).   The *Hinkle* rule "derives principally not from consideration for the defendant, but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of government." *Oden v. PepsiCola Bottling Co.*, 621 So. 2d 953, 955 (Ala. 1993) (citations omitted).

37.     Alabama federal courts also have consistently found state law claims to be barred by the *Hinkle* Rule where those claims were based, in whole or in part, on a plaintiff's participation in wrongful conduct.   *See, e.g., Dapremont v. Overcash, Walker & Co., P.C.*, No. Civ.A. 99-0353- BH-M, 2000 WL 1566532, at *3, 7 (S.D. Ala. Oct. 4, 2000) (plaintiff who was found to have illegally evaded income taxes was barred by the *Hinkle* Rule from asserting claims for negligence, fraudulent suppression, and accounting malpractice against the accounting firm and CPA that prepared his company's tax returns); *Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP*, No. 2:11-cv-746, 2017 WL 8890271, at *30-38 (M.D. Ala. Dec. 28, 2017) (plaintiff's claims for professional negligence against defendant accounting firm were barred by the *Hinkle* Rule because the plaintiff participated in the fraud).

38.     Under federal law, the minimum age for tobacco products is 18 years old.   *See* 21 CFR 1140.14(a)(1); 81 F.R. 28974-01, 29104.   In Alabama, "[i]t is unlawful for any minor to purchase, use, or transport tobacco or tobacco products . . . ." ALA. CODE § 28-11-13.   Assuming A.B. "began using and purchasing JUUL vaping products when he was 16 from a local store, Athens Smoke Shop," as alleged, he did so illegally. SAC, ¶ 16.   *See* ALA. CODE § 28-11-13(b).   Plaintiff's claims against the Resident Defendant thus "rely in whole or in part" on illegal activity proscribed by Alabama Code § 28-11-13.   Under the doctrine of *in pari delicto* and

the *Hinkle* Rule, Plaintiff's negligence, gross negligence, and willful and wanton conduct claims against the Resident Defendant fail as a matter of law.

39.     The negligence, gross negligence, and wanton and willful conduct claims also fail because the Resident Defendant did not owe a legal duty to Plaintiff or to his minor son.  The Alabama Supreme Court has repeatedly declared that "for one to maintain a negligence action the defendant must have been subject to a legal duty." *Thompson v. Mindis Metals, Inc.,* 692 So. 2d 805, 807 (Ala. 1997); *see also*, *e.g.*, *DiBiasi v. Joe Wheeler Elec. Membership Corp.*, 988 So. 2d 454, 460 (Ala. 2008) ("[W]here there is no duty, there can be no negligence.") (internal citation omitted).  The existence of a duty is a "strict legal question" to be determined by the court.  *Id.*  The existence of a duty is determined by a number of factors, including: "(1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened." *Taylor v. Smith*, 892 So. 2d 887, 892 (Ala. 2004).  Additionally, a negligence or wantonness claim must allege an injury proximately caused by the defendant's act or omission.  *Byrd v. Commercial Credit Corp.*, 675 So. 2d 392, 393 (Ala. 1996); *D.A.C. v. Thrasher*, 655 So. 2d 959, 961 (Ala. 1995); *Pitt v. Century II, Inc.*, 631 So. 2d 235, 240 (Ala. 1993).

40.     A retailer has no duty "to inspect the content of sealed packages" or "to test articles to discover latent defects, or hidden dangers." *Kroger Co. v. Goodhew,* 206 So. 2d 882, 885–86 (Ala. 1968).  The Resident Defendant has no knowledge of

the alleged health risks that Plaintiff claims should have been disclosed.  Athens Smoke Shop Decl. ¶¶ 11-13.  Nor does it possess any specialized or superior knowledge about the health effects of nicotine.  Athens Smoke Shop Decl. ¶¶ 11-12. Accordingly, it did not owe a legal duty to Plaintiff or his minor son, and there is no possibility that Plaintiff's negligence or wantonness claims could prevail under Alabama law.  *Legg*, 428 F.3d at 1323-24 (holding that there was no reasonable possibility under Alabama law that resident defendant with no knowledge of product risks could be found to have breached a legal duty); *Estate of Reynolds v. Proctor & Gamble Distrib. Co.*, 2018 WL 6070345 *5 (M.D. Ala. Nov. 20, 2018) (holding that retail employee with no knowledge of alleged risks of product could not be liable on customer's claims of negligence and wantonness).

### C.   Fraud and Intentional Misrepresentation

41.   When attempting to plead claims for fraud and intentional misrepresentation in Counts V and VII, Plaintiff lumps all Defendants together and alleges in conclusory fashion that they committed fraud and intentionally misrepresented material facts when advertising and selling JUUL products. Despite their generality, however, it is clear that Plaintiffs' allegations concerning misrepresentations and failures to disclose do not apply to the Resident Defendant. Indeed, among other things, the alleged misrepresentations and failures to disclose (1) are based on information concerning JUUL products that the Resident Defendant

20

*never* possessed and therefore could not have misrepresented or concealed; (2) pertain to activities, such as social media and packaging, in which the Resident Defendant never had *any* involvement, *e.g.*, *id*. ¶¶ 206-226; (3) are related to a conspiracy that is not even alleged to include the Retailer Defendant, *e.g.*, *id*. at ¶¶ 344-347; and/or (4) refer to representations allegedly made by "Defendant JUUL" specifically, *e.g.*, *id*. ¶ 329.

42.   In addition, Plaintiff's fraud and intentional misrepresentation claims do not include any allegations that even mention the Resident Defendant, let alone an allegation that the Resident Defendant made a specific representation to Plaintiff regarding any aspect of a JUUL product or that this representation was false.  To the contrary, Plaintiff's Complaint elsewhere asserts that when A.B. first used JUUL products, he "believed that JUUL was safe, harmless, fun, and cool" "as a result of *JUUL's* wildly successful marketing campaign." SAC, ¶ 119 (emphasis added).

43.   To prevail on a claim for fraudulent misrepresentation, a plaintiff must establish: (1) the defendant made a misrepresentation; (2) the misrepresentation concerned a material existing fact; (3) the plaintiff relied on the misrepresentation; and (4) the reliance was to the plaintiff's detriment.  *Jewell v. Seaboard Indus., Inc.*, 667 So. 2d 653, 657–658 (Ala. 1995).  To establish a cause of action for suppression, a plaintiff must show that: (1) the defendant had a duty to disclose material facts; (2) the defendant concealed or failed to disclose those facts; (3) the concealment or

failure to disclose induced the plaintiff to act; and (4) the defendant's action resulted in harm to the plaintiff. *Id*. A defendant "can be liable for suppression only if it had knowledge of the material fact it allegedly suppressed." *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 837 (Ala. 1998). The allegations in the Complaint do not show a reasonable possibility that Plaintiff can establish these requirements with respect to the Resident Defendant.

44.    Again, Plaintiff does not allege that the Resident Defendant made any specific representations to him at any time, let alone one that was false and upon which Plaintiff or his minor son reasonably relied upon. Rather, in an apparent attempt to state a claim that avoids the Innocent Seller Statute, Plaintiff appears to predicate his fraud claim on allegations that the Resident Defendant sold JUUL products with knowledge of the addictive properties of nicotine and failed to disclose that information to Plaintiff. There is no reasonable possibility Plaintiff could recover in fraud against the Resident Defendant based on such a theory.

45.    In fact, the Resident Defendant has no knowledge of any alleged defect in a JUUL product, including an unreasonably high nicotine content, or the health risks, if any, that may be associated with the use of a JUUL product. Athens Smoke Shop Decl. ¶¶ 11-13. The Resident Defendant also does not possess any specialized or superior knowledge of the health effects of nicotine. *Id*. On these undisputed

facts, there is no possibility that Plaintiff could recover on his fraud or intentional misrepresentation claims against the Resident Defendant.

46.     Further, there is no possibility Plaintiff could recover on a fraud or intentional misrepresentation claim based upon the Resident Defendant's use of JUUL display material.  The Resident Defendant had no knowledge of any defect in JUUL's products and furthermore played no part in the creation of displays or other marketing materials of JUUL products.  The same is true with respect to Plaintiff's allegations concerning misrepresentations or failures to disclose purportedly made through other media for which the Resident Defendant had no responsibility, such as packaging, promotions, social media or JUUL's website.  *See*, *e.g.*, Compl. ¶¶ 339, 351.  Although Plaintiff alleges that such misrepresentations were made by "Defendants" generically, it is clear that the Resident Defendants could not have made such statements and could bear no liability for them.

47.     Fraud claims based on suppression or failures to disclose would fail for similar reasons.  The Resident Defendant, who played no role in the design, manufacture or labeling of any JUUL product, had no knowledge of the material facts they are alleged to have suppressed or failed to disclose.  *See* Athens Smoke Shop Decl. ¶¶ 8-13.  Moreover, the Resident Defendant had no duty to disclose to Plaintiff any alleged dangers or other "material information" concerning JUUL e-cigarette products.  Although "[a] duty to communicate can arise from a confidential

relationship between the plaintiff and the defendant, from the particular circumstances of the case, or from a request for information," "mere silence in the absence of a duty to disclose is not fraudulent." *Id.*   It is not reasonably possible that an Alabama state court would impose a duty on the Resident Defendant to disclose information that they never even possessed.  *See Culpepper*, 968 F. Supp. 2d at 1157 (holding that plaintiff could not establish fraud or suppression claims against sales representative who made no representations regarding product, had no involvement with its design, development, manufacture, testing or labeling and who had no knowledge of the alleged defect).

48.    For all of these reasons, as a matter of "reason and common sense," there is no possibility that Plaintiff could recover from the Resident Defendant on a fraud or intentional misrepresentation claim.  *See Legg*, 428 F.3d at 1324 (plaintiff could not recover on a fraudulent misrepresentation claim under Alabama law against seller of allegedly harmful drug who had no knowledge drug could cause injury); *Culpepper*, 968 F. Supp. 2d at 1156-57 (same); *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1218 (N.D. Ala. 2006) (same).

### D.    Conspiracy to Commit Fraud

49.    Plaintiff's conspiracy to commit fraud claim is alleged only against the Removing Defendants and the fictitious party defendants. *See* SAC ¶ 344 ("Defendant JUUL was part of a conspiracy with tobacco and e-cigarette industry

players, Altria Group, PAX Labs, Inc., and Fictitious Defendants 1-13 . . . .").  It is *not* alleged against the Resident Defendant, and thus there is no possibility Plaintiff could recover against the Resident Defendant on this claim.

50.   Moreover, even if Plaintiff's conspiracy claim were alleged against the Resident Defendant and the Removing Defendants, it still would fail as to the Resident Defendant because of Plaintiff's failure to state any viable, underlying tort claim against it.  *See, e.g., Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993) ("Liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy."); *Diefenderfer v. Ford Motor Co.*, 916 F. Supp. 1155, 1163 (M.D. Ala. 1995), *aff'd*, 91 F.3d 163 (11th Cir. 1996) (when dismissal is appropriate for defendant on underlying claims, plaintiff cannot state a conspiracy claim against the defendant); *Funliner of Alabama v. Pickard*, 873 So. 2d 198, 212 (Ala. 2003) ("A defendant cannot be held liable for civil conspiracy absent the commission of some other independently recognized tort.") (internal citations omitted).

### E.     Unjust Enrichment

51.   To prevail on an unjust enrichment claim, a plaintiff must establish either that the defendant holds money that, in equity and good conscience, belongs to the plaintiff, or that the defendant holds money that was improperly paid because of mistake or fraud.  *See Avis Rent A Car Systems, Inc. v. Heilman,* 876 So. 2d 1111,

1123 (Ala. 2003).   The Alabama Supreme Court has held that "[r]etention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837, 843 (Ala. 2004).   But "[i]n the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched."   *Id.* (emphasis in original).

52.    Plaintiff's Complaint does not show that an unjust enrichment claim against the Resident Defendant would be possible.   For all the reasons discussed above, Plaintiff does not allege and cannot show that Athens Smoke Shop—a retailer protected by the Innocent Seller Statute without knowledge of the allegedly fraudulent and conceal information—engaged in any fraud or other unconscionable conduct that would support an unjust enrichment claim against it.   Moreover, Plaintiff cannot show that he acted under a mistake of fact or in "misreliance" on a right or duty because of the Resident Defendant.   Plaintiff's Complaint asserts that when A.B. first used JUUL products, he "believed that JUUL was safe, harmless, fun, and cool" "as a result of JUUL's wildly successful marketing campaign." SAC ¶ 119.   Accordingly, regardless of A.B.'s belief when first using JUUL, and whether it was reasonable, A.B.'s belief was not been based on information from the Resident

Defendant.[3]  Likewise, Plaintiff cannot show that A.B. did not voluntarily pay for the products in question after knowing they are addictive.[4]

### F.    Outrage

53.    Plaintiff's outrage claim against the Resident Defendant likewise fails. The tort of outrage is limited to "egregious" cases and is "only found in rare circumstances." *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1060 (S.D. Ala. 2007); *see also Ex parte Bole*, 103 So. 3d 40, 52 (Ala. 2012) ("The tort of outrage is an extremely limited cause of action.").  To establish outrage, a plaintiff must prove that the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *S.B. v. Saint James School*, 959 So. 2d 72, 93 (Ala. 2006). *See also B.V. v. Davidson*, 77 So. 3d 1187, 1191-92 (Ala. Civ. App. 2010) ("A plaintiff seeking to establish the tort of outrage bears a heavy burden."); *Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000) ("This Court has recognized the tort of outrage in three areas: (1) wrongful conduct within the

---

[3]  *See* Athens Smoke Shop Dec. ¶ 14.

[4]  Plaintiff's unjust enrichment claim fails under the "voluntary payment" doctrine.  Such a claim is "precluded by proof that the plaintiff voluntarily paid what he or she is seeking to recover." *Stone v. Mellon Mortg. Co.*, 771 So. 2d 451, 456 (Ala. 2000).  It would defy logic, reason, common sense, and be entirely unprecedented for a plaintiff to be able to sue a retailer for unjust enrichment when he voluntarily buys an electronic nicotine delivery system because the product contains nicotine.

context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment.").

54.     Plaintiff's outrage claim is based on the same factual allegations as his other claims against the Resident Defendant.  Because there is no possibility that Plaintiff may recover against the Resident Defendant on any of his other claims, as discussed above, the Resident Defendant's alleged conduct necessarily cannot support an outrage claim as a matter of law.  Indeed, the allegations pertaining to the Resident Defendant do not remotely fall under the types of situations where this theory of liability has been recognized.

55.     For all these reasons, "there is no possibility the plaintiff can establish any cause of action against the resident defendant." *Cabalceta,* 883 F.2d at 1561. Because there is no possibility that Plaintiff may recover against the Resident Defendant, its joinder was fraudulent, and its citizenship may be disregarded for jurisdictional purposes.

56.     The Removing Defendants reserve the right to amend or supplement this Notice of Removal.

**WHEREFORE**, Removing Defendants pray that the filing of the Notice of Removal, and the giving of written notice thereof to the Plaintiff, and the filing of a copy of this Notice of Removal with the Clerk of the Circuit Court of Limestone County, Alabama, shall effect removal of said suit to this Court.

Respectfully submitted this 14th day of August 2019.

s/ *William H. Brooks*
Attorney for Defendant
JUUL Labs, Inc.

OF COUNSEL:

William H. Brooks
Lana A. Olson
Jeffrey P. Doss
Christopher C. Yearout
**LIGHTFOOT, FRANKLIN & WHITE, LLC**
400 20th Street North
Birmingham, Alabama 35209
Telephone: (205) 581-0700
Facsimile:  (205) 581- 0799
*wbrooks@lightfootlaw.com*
*lolson@lightfootlaw.com*
*jdoss@lightfootlaw.com*
*cyearout@lightfootlaw.com*

Austin Schwing
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street
San Francisco, CA 94105-0921
Telephone: (415) 393-8210
Facsimile:  (415) 374-8458
*aschwing@gibsondunn.com*

s/ *R. Bruce Barze* (with permission)
Attorney for Defendants
Altria Group, Inc. & Philip Morris USA Inc.

OF COUNSEL:

R. Bruce Barze, Jr.
Lisa McCrary
**BARZE TAYLOR NOLES LOWTHER LLC**
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 330
Birmingham, Alabama 35209
Telephone: (205) 872-1032
*bbarze@btnllaw.com*
*lmccrary@btnllaw.com*

John C. Massaro
David E. Kouba
**ARNOLD & PORTER LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile:  (202) 942-5999
*john.massaro@arnoldporter.com*
*David.kouba@arnoldporter.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August 2019, the foreoing was electronically filed via the CM/ECF system, which will send notice of such filing to::

Jere L. Beasley, Esq.
Andy D. Birchfield, Jr., Esq.
Joseph VanZandt, Esq.
BEASLEY, ALLEN, CROW,
METHVIN PORTIS & MILES, LLC
234 Commerce Street
Montgomery, AL 36103
*Jere.Beasley@BeasleyAllen.com*
*Andy.Birchfield@BeasleyAllen.com*
*Joseph.VanZandt@BeasleyAllen.com*

s/ *William H. Brooks*
Of Counsel